# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| PROPERTY-OWNERS INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) NO. 1:15-cv-87<br>) |
| VIRK BOYZ LIQUOR STORES, LLC d/b/a KPC LIQUOR STORES, INC., KPC LIQUOR STORES, INC. d/b/a STEIN TAVERN, TERRY J. WOODS, and DWAYNE E. RUSSELL, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## OPINION AND ORDER

This is a declaratory judgment action in which Property-Owners Insurance Company seeks a declaration that it has no duty to defend or indemnify its client, Virk Boyz Liquor Store, the owner of a place called Stein Tavern. Virk Boyz was sued in state court for damages arising out of a bar fight that occurred at Stein Tavern. Property-Owners seeks summary judgment on both the issue of whether it has a duty to defend Virk Boyz and also a duty to indemnify it. [DE 26.] But because there are disputed questions of fact, summary judgment is denied on the duty to defend issue, and because the issue of indemnity is not ripe, that portion of this action is dismissed without prejudice.

**Factual Background**

Terry Woods was a patron at Stein Tavern on December 28, 2013, and admits that he drank to intoxication. Woods was involved in an altercation at the bar that night and was seriously injured as a result. Approximately eight months later, Woods filed a case against the bar owner (the defendant in our case) in state court and alleged four separate causes of action. Count I is a negligence claim based on a failure to intervene theory. In particular, Woods claims that he was assaulted by another customer after he had requested assistance in fending off an impending attack. [DE 10-2 ¶ 5.] Woods says in Count I that Dwayne Russell, the Stein Tavern bartender, failed to protect him and negligently failed to intervene to stop the assault. [*Id.* ¶ 7.] Count II states a claim for negligently hiring Russell. Count III states a claim for negligent failure to train Russell. Finally, Count IV is a dram-shop claim. In it Woods alleges that Stein Tavern furnished alcoholic beverages to him when he "was visibly intoxicated and was served additional alcoholic beverage to a state of further intoxication" and the intoxication "was an actual and proximate cause of the incident and serious and permanent injuries to Plaintiff." [*Id.* ¶¶ 24, 26.] Woods was seriously injured during the bar fight and suffered permanent partial paralysis.

While not included in the allegations in the underlying complaint, Property-Owners sets forth additional facts in its statement of material facts in support of this motion. This is where I first learned that the bartender, Russell, was actually involved in the altercation. Property-Owners tells me that Woods "was injured after he was

2

struck several times with a pool cue across his upper back and neck, punched in the face with a closed fist and 'body-slammed' to the floor by Dwayne Russell" [DE 26-1 at ¶ 3] and that Russell pled guilty to one count of aggravated battery and one count of battery [*Id.* at ¶ 4]. Property-Owners also submitted a video of the incident which I have reviewed. [DE 26-7.]

Ultimately, Virk Boyz demanded that Property-Owners defend and indemnify it in the underlying lawsuit, and Property-Owners agreed to defend but only under a reservation of rights. Property-Owners now asks me to find that there is no coverage under the insurance policy for the underlying lawsuit, and also that there is no duty to defend Virk Boyz as well.

The operative Policy of Commercial General Liability Insurance issued by Property-Owners contains the following exclusion:

**c.     Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable for reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance, or regulation relating to the sale, gift, distribution or use of alcoholic beverages,

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

[DE 10-5.]

Additionally, the Policy provides the insurance applies to "bodily injury" and "property damage" only if the "bodily injury" or "property damage" is caused by an "occurrence." [*Id.*] An "occurrence" is defined by the Policy as an "accident that results in bodily injury or property damage." [*Id.*] There is also an expected or intended bodily injury exclusion, providing that the insurance does not apply to "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured." [*Id.*] The Policy also contains a "separation of insureds" provision stating the Policy applies "[s]eparately to each insured against whom claim is made or 'suit' is brought." [*Id.*]

Property-Owners has four arguments in support of its position that there is no duty to defend or indemnify Stein Tavern under the insurance policy: (1) the liquor liability exclusion bars coverage for all of the claims brought by Woods; (2) the claims for negligent hiring and training do not constitute an "occurrence" under the Policy; (3) the injury to Woods was intentional from the standpoint of Stein Tavern and Russell and thus excluded under the Policy; and (4) the insured never notified Property-Owners of the loss or incident. [DE 27 at 2.] I'll take up each of these in turn below.

## Discussion

The parties agree that the substantive law applicable to this case is the law of the State of Indiana. Property-Owners has been providing a defense in the underlying suit under a reservation of rights. And under Indiana law, an insurer can "clarify its obligation by means of a declaratory judgment action," like this one. *Liberty Mut. Ins. Co. v. Metzler*, 586 N.E.2d 897, 902 (Ind. Ct. App. 1992).

4

Let's start with some basics. The interpretation of an insurance policy, like other contracts, is typically a question of law that I can resolve on summary judgment. *Bosecker v. Westfield Ins. Co.*, 724 N.E.2d 241, 243 (Ind. 2000). When interpreting an insurance policy, my goal is to ascertain and enforce the parties' intent as reflected in the insurance contract. *Buckeye State Mut. Ins. Co. v. Carfield*, 914 N.E.2d 315, 318 (Ind. Ct. App. 2009). If the policy language is clear and unambiguous, it should be given its plain and ordinary meaning. *Am. States Ins. Co. v. Adair Indus., Inc.*, 576 N.E.2d 1272, 1273 (Ind. Ct. App. 1991). However, ambiguous terms in the contract are to be construed against the insurer, especially where the policy excludes coverage. *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 151 (7th Cir. 1994).

Insurance policies are adhesion contracts. They are drafted by insurance companies and are basically a "take it or leave it" deal. It is for this reason that any exclusions or limitations in an insurance policy must be plainly expressed, and any doubt or ambiguity in the policy must be read in favor of the insured. *Am. Family Life Assurance Co. v. Russell*, 700 N.E.2d 1174, 1177 (Ind. Ct. App. 1998). "The exclusionary clause must clearly and unmistakably bring within its scope the particular act or omission that will bring the exclusion into play, and any doubts to the coverage under the policy shall be construed against the insurer to further the policy's basic purpose of indemnity." *Id.* An insurer bears the burden of proving that an exclusion applies. *PSI Energy, Inc. v. Home Ins. Co.*, 801 N.E.2d 705, 725 (Ind. Ct. App. 2004).

An insurance company's duty to defend is broader than its duty to indemnify.

5

*Seymour Mfg. Co., Inc. v. Commercial Union Ins. Co.*, 665 N.E.2d 891, 892 (Ind. 1996). An insurer is obligated to defend its insured against suits alleging facts that might fall within the coverage of the policy. *Fed. Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563, 566 (7th Cir. 1997). "[T]here is essentially only one standard - that the allegations of the complaint, including the facts alleged, give rise to a duty to defend whenever, if proved true, coverage would attach." *Id.* Only if there is no possible factual or legal basis on which the insurer might be obligated to indemnify will the insurer be excused from defending its insured. Lee R. Russ, 14 COUCH ON INSURANCE § 200:12 (3d ed. 2007); *see also Ticor Title Ins. Co. of Cal. v. FFCA/IIP 1988 Prop. Co.*, 898 F. Supp. 633, 638-39 (N.D. Ind. 1995) (if there is even a possibility of coverage, the insurer is obligated to defend).

The first place to look when trying to determine the insurer's duty to defend is the allegations contained within the complaint and from those facts known or ascertainable by the insurer after reasonable investigation. *Knight v. Ind. Ins. Co.*, 871 N.E.2d 357, 362 (Ind. Ct. App. 2007); *Liberty Mut. Ins. Co. v. OSI Indus., Inc.*, 831 N.E.2d 192, 198 (Ind. Ct. App. 2005). It used to be under Indiana law that the duty to defend was "determined solely by the nature of the complaint." *Transamerica Ins. Serv. v. Kopko*, 570 N.E.2d 1283, 1285 (Ind. 1991). However, several Indiana appellate decisions have more recently declined to follow *Kopko* and found that "in evaluating the factual basis of a claim and the insurer's concomitant duty to defend, this court may properly consider the evidentiary materials offered by the parties to show coverage." *Wayne Twp. Bd. of Sch. Comm'rs v. Ind. Ins. Co.*, 650 N.E.2d 1205, 1208 (Ind. Ct. App. 1995) (citing *Trisler v.*

6

*Ind. Ins. Co.*, 575 N.E.2d 1021, 1023 (Ind. Ct. App. 1991)). This point was proven when the Indiana Supreme Court considered extrinsic, designated evidence when analyzing an insurer's duty to defend. *See Auto-Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279, 1291 (Ind. 2006). As such, I have considered the relevant designated evidence when determining whether Property-Owners owes a duty to defend. *See Continental Ins. Co. v. George J. Beemsterboer, Inc.*, 148 F.Supp.3d 770, 781-82 (N.D. Ind. 2015) (analyzing relevant case law and finding it appropriate to consider extrinsic evidence in assessing an insurer's duty to defend).

Finally, an insurer must defend an action even if only a small portion of the conduct alleged in the complaint falls within the scope of the insurance policy. *See Curtis-Universal, Inc. v. Sheboygan Emergency Med. Servs., Inc.*, 43 F.3d 1119, 1122 (7th Cir. 1994). So "[i]f the policy is otherwise applicable, the insurance company is required to defend even though it may not be responsible for all of the damages assessed." *Ind. Farmers Mut. Ins. Co. v. N. Vernon Drop Forge, Inc.*, 917 N.E.2d 1258, 1267 (Ind. Ct. App. 2010) (citation omitted). In other words, in for a penny, in for a pound.

Here, Stein Tavern does not dispute that it is not entitled to coverage for the dram-shop claim in Count IV of Woods' state court complaint. That claim is obviously excluded by the liquor liability exclusion in the Policy. But Property-Owners must still defend the case if I find that any of the other claims set out in the state court complaint fall within the scope of the Policy.

7

**I.     Whether the Liquor Liability Exclusion Excludes Coverage**

Property-Owners argues that the liquor liability exclusion in the Policy excludes coverage for all of the claims. The Policy contains this exclusion: "bodily injury . . . for which any insured may be held liable for reason of: (1) Causing or contributing to the intoxication of any person." [DE 10-5.] It claims the case *Property-Owners Ins. Co. v. Ted's Tavern, Inc.*, 853 N.E.2d 973 (Ind. Ct. App. 2006), is controlling and dispositive.

In *Ted's Tavern*, two men worked at Big Jim's and they served four Long Island Ice Teas to Wickliff, a patron. *Id.* at 976. Shortly after leaving Big Jim's, Wickliff drove his vehicle head-on into a car, killing the other driver. *Id.* At the time of the collision, Wickliff was intoxicated and operating his car with a blood alcohol level of .21. *Id.* The complaint raised four counts: (1) negligence, (2) negligent hiring, training and supervising employees, (3) violations of the dram-shop act, and (4) nuisance. *Id. Ted's Tavern* contained an identical liquor liability exclusion as the one at issue in this case. *Id.* at 978. The trial court issued partial summary judgment in the insured's favor, finding Property-Owners owed a duty to defend on the claims of negligent hiring, training, and supervising employees, as well as nuisance. The appellate court reversed and entered judgment for Property-Owners on those challenged counts. In so doing, it noted that the negligent hiring, training, and supervision count and the nuisance count incorporated by reference the common allegations. *Id.* at 982. It also reasoned:

> Regardless of the theories of liability a resourceful attorney may fashion from the circumstances of this case, the allegations within Counts II and IV are general 'rephrasings' of the core negligence claim for causing/contributing to Wickliff's drunk driving. The

8

> events outlined in Counts II and IV simply are not wholly independent of 'carelessly and negligently' serving and continuing to serve alcoholic beverages to Wickliff when the defendants knew or should have known he was intoxicated and soon thereafter could be driving drunk. To the contrary, the nuisance and the negligent hiring, training, and supervision are so inextricably intertwined with the underlying negligence that there is no independent act that would avoid exclusion . . . .

*Id.* at 983 (citations omitted).

This case is entirely different from *Ted's Tavern*. First, the allegations of failure to intervene, and negligent hiring, training, and supervision of Russell in the underlying complaint (Counts I-III) come numerically before the dram-shop count (Count IV), and thus do not incorporate the same facts. Second, these claims do not reference the sale or service of alcohol at all. Rather, Count I alleges Stein Tavern was negligent for its failure to intervene or stop the assault, or call the police when Woods was assaulted. Count II alleges Stein Tavern breached its duty to Woods by hiring Russell when it should have known he was incompetent and unfit for employment as a bartender/bouncer. And Count III alleges that Stein Tavern was negligent in failing to train Russell to prevent the assault. These claims are not "inextricably intertwined" with the negligent provision of alcohol. In fact, they have nothing to do with the sale of alcohol at all.

As the Seventh Circuit has recognized, "dram shop cases in which courts have not applied the [liquor] exclusion involve a separate negligent action performed by an agent of the insured *after* the furnishing of alcohol." *Netherlands Ins. Co. v. Phusion Projects, Inc.*, 737 F.3d 1174, 1179 (7th Cir. 2013) (emphasis in original). That is exactly

9

what is alleged to have happened here - Russell over served Woods alcohol. Then, Russell allegedly failed to protect Woods from a bar fight, failed to intervene, and failed to call the police. These are all claims quite separate from serving alcohol. Moreover, the claims that Stein Tavern negligently hired and then failed to train its employee to take reasonable steps to prevent assaults are also unrelated to the service of alcohol.

What's more, bar fights are a common occurrence, and sometimes they occur for reasons utterly unrelated to the sale of alcohol. Suppose Woods was hitting on another patron's girlfriend which caused the fight (and his subsequent injuries). Or suppose he made a wise crack about another patron's bad breath. The ensuing bar fight and his resulting injuries would have nothing to do with the sale of alcohol. In such a situation, the bar owner could be liable for a failure to train its employees or failure to protect or intervene, and it would have nothing whatsoever to do with the sale of alcohol. In that situation, Woods would not — in the language of the policy — be sustaining "injuries by reason of causing or contributing to the intoxication" of anyone. And even if Woods was drunk, the cause of the injury would not be the alcohol, but the bar's failure to protect him or failure to train its staff.

It's for this reason that I agree with *Dennis v. Finish Line, Inc.*, 636 So.2d 944, 947 (1st Cir. 1994), which analyzed the duty to defend and a similar liquor liability exclusion, and found that "Plaintiffs' petitions, however, include allegations of fault for failure of [the bar] to properly train its employees, failure to supervise its employees, and failure to take necessary precautions, all of which go beyond injury caused by

10

serving alcohol." Similarly, in *Penn-America Ins. Co. v. Peccadillos, Inc.*, 27 A.3d 259 (Pa. 2011), the complaint alleged negligence in ejecting a drunk patron from the bar who was later involved in a fatal car crash. The court affirmed summary judgment finding coverage despite a liquor liability exclusion, reasoning that the claim the bar negligently ejected a drunk patron after a physical altercation rather than summoning the police, when they should have known he would try to drive, "is not based on whether [the bar] caused or contributed to Latta's intoxication. Instead, it premises liability on [the bar's] ejection from its premises of two sorely intoxicated patrons . . . [t]hese allegations neither assert nor rely on [the bar's] violation of the Liquor Code or any statute, nor do they arise directly from [the bar's] provision of liquor or contribution to the men's intoxicated condition." *Id.* at 268.

Like these cases, I also find the claims of failure to intervene and negligent hiring, supervision, and training, are claims that do not rely upon or directly arise from Stein Tavern's service of alcohol. In sum, I do not think the liquor liability exclusion unambiguously excludes coverage in this case.

## II. Whether There Was an Occurrence to Trigger the Policy

Property-Owners argues there is no trigger of coverage for the negligent hiring and training claims because they do not constitute an occurrence. The parties agree that "occurrence" is defined in the policy as "an accident." In the context of an insurance contract, an accident means an unexpected happening without intention or design. *Harvey*, 842 N.E.2d at 1283; *Terre Haute First Nat'l Bank v. Pacific Employers Ins. Co.*, 634

N.E.2d 1336, 1338 (Ind. Ct. App. 1993).

While Property-Owners tries to paint the hiring and training as an intentional process, I just don't think that characterization holds water. Obviously, from the standpoint of Stein Tavern, it did not *intentionally* set about to hire someone unqualified, or to provide substandard training to an employee. Moreover, the altercation with Woods was an unexpected happening, without intention or design from the standpoint of Stein Tavern.

This case is similar to *Wayne Township Board of School Commissioners v. Indiana Insurance Co.*, 650 N.E.2d 1205, 1208 (Ind. Ct. App. 1995), in which a principal hired by the school sexually molested a student while in his office. The school argued the theories of negligence against it constituted an occurrence under the policy. The court agreed, finding the insurance company "has not designated any evidence demonstrating that the school's alleged conduct was not an accident: there is no evidence that the school intended or expected [the principal's] misconduct or that the molestation was the result of the school's intent or design." *Id.* at 1209. Aside from the allegation that the school acted negligently, "[t]here is no evidence demonstrating that any unreasonable conduct on the part of the school was not accidental. And, we cannot impute [the principal's intent to injure the student] to the school." *Id.* at 1209.

This case, like *Wayne Township*, also involves a "separation of insureds" provision in the Policy that claims against each insured will be treated separately. [DE 10-5.] Property-Owners has not submitted any evidence showing that any negligent or

12

unreasonable conduct on the part of Stein Tavern was not accidental. At a minimum, the Policy is ambiguous when determining if an event is an accident, whether it should be considered from the point of each individual insured's standpoint.

While Property-Owners tries to rely on *Erie Insurance Co. v. American Painting Co.*, 678 N.E.2d 844 (Ind. Ct. App. 1997), as Woods points out in his response, the Supreme Court of Indiana in *Harvey*, 842 N.E.2d 1279, held that cases like *Red Ball Leasing, Inc. v. Hartford Accident & Indemnity Co.*, 915 F.2d 306, 312 (7th Cir. 1990), and other cases upon which *American Painting* relies upon are:

> [U]nclear, potentially confusing, and likely to result in subjective and unpredictable judicial applications. Determining the availability of coverage based on whether negligence is 'attenuated from the volitional act' is an unsatisfactory standard. Application of such a tool for construction of an 'occurrence' or 'accident' runs counter to our well-established principle that where insurance policies are ambiguous, they are to be 'construed strictly against the insurer' and the policy viewed from the insured's standpoint. Any doubts as to the coverage under the policy will be construed against the insurer in order to further the policy's basic purpose of indemnity.

*Harvey*, 842 N.E.2d at 1285-86 (citations and quotation omitted).

Because the Policy is ambiguous as it relates to "occurrence" and "accident," and construing it most favorably as to the insured, as I must do, I find the claims of negligent hiring and training are covered by the Policy and Property-Owners owes a defense in the underlying suit.[1] At the very least, a genuine issue of material fact exists

---

[1] Because I have made this finding, there is no need to address Property-Owners' argument that there is no trigger of coverage for failure to provide adequate security. [DE 27 at 10-11.]

with respect to whether the negligence claims against Stein Tavern for bodily injuries sustained by Woods arose by "accident."

### III. Whether The Expected Bodily Injury Exclusion Bars Coverage

Property-Owners also contends the "expected or intended injury" exclusion precludes coverage, arguing Russell's guilty plea to battery resulting in serious bodily injury necessarily means that Russell intended to injure Woods, so there can be no "accident" covered by the Policy. It contends "it is quite clear that a person that picks up a pool cue and repeatedly strikes another with it, punches him in the face with a closed fist and then body-slams him to the ground intends or expects the victim will sustain harm or bodily injury as a result." [DE 27 at 18.] However, as noted earlier, claims of intentional injury committed by an employee can still constitute an "accident" with respect to a negligence claim against the employer. *See Wayne Twp.*, 650 N.E.2d at 1208; *American Family Mut. Ins. Co. v. Bower*, 752 F.Supp.2d 957, 964-65 (N.D. Ind. 2010). There has been no evidence submitted that has shown that Stein Tavern expected or intended for an injury to occur to Woods. From the standpoint of Stein Tavern, nothing tends to show it intentionally injured Woods. *See Bower*, 752 F.Supp.2d at 971 (finding intentional act exclusion did not apply, as "a reasonable insured would believe from the severability provision that their insurance coverage and any exclusion of coverage would be judged on the basis of their particular conduct and acts within their control."). Consequently, the bodily injury exclusion does not bar coverage under the Policy.

### IV. Whether Coverage is Precluded by the Alleged Failure to Provide Timely Notice

Finally, Property-Owners argues that because Stein Tavern failed to comply with the notice provisions in the Policy, coverage is barred. The Policy provides that the insured must notify Property-Owners "as soon as practicable" of an occurrence of an offense which might result in a claim. [DE 10-5.] It is undisputed that Property-Owners was notified of Woods' underlying action on August 27, 2014, three weeks after the filing of the complaint, one day after service of summons upon Stein Tavern, and approximately eight months after the actual bar fight.

The parties cite conflicting law about whether there is a presumption of prejudice from late notice (and that presumption may be overcome), or if actual prejudice must be shown. Regardless of which standard applies, I don't believe Property-Owners has been prejudiced as a result of any delayed notice. Property-Owners found out about the underlying lawsuit shortly after it was filed, and only eight months had passed since the incident. Although Property-Owners asserts it was not able to make an adequate and timely investigation into the incident, including questioning the parties and witnesses while their memories were sharp, importantly, there is a video depicting the events that occurred that evening at Stein Tavern. And there is no indication that Stein Tavern knew at the time of the bar fight, or any time thereafter, that a civil claim would be filed. As such, there was no prejudice to Property-Owners due to any delay in providing notice.

**V.     The Issue of Indemnification is Premature**

Because Property-Owners has a duty to defend the claims made by Woods for

the negligent hiring, retention and training of Russell, Property-Owners owes a duty to defend Stein Tavern for the entire lawsuit. *Aearo Corp. v. American Int'l Specialty Lines Ins. Co.*, 676 F.Supp.2d 738, 745 (S.D. Ind. 2009); *see also Curtis-Universal, Inc. v. Sheboygan Emergency Med. Servs., Inc.*, 43 F.3d 1119, 1122 (7th Cir. 1994) (reiterating "the principle that if any of the conduct alleged in the complaint falls within the scope of the insurance policy, the insurer must defend"). However, a determination of indemnification is premature at this point, given that the state court has not yet determined whether Stein Tavern is liable for the underlying claims. *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) ("decisions about indemnity should be postponed until the underlying liability has been established"); *Grinnell Mut. Reinsurance Co. v. Reinke*, 43 F.3d 1152, 1154 (7th Cir. 1995) (finding the duty to indemnify is unripe until the insured has been held liable).

I realize I could potentially take two courses of action with regard to the duty to indemnify: stay the indemnity issue pending resolution of the state court action, or dismiss that part of the case. The Seventh Circuit has criticized a district court for staying an unripe duty to indemnify claim: "[t]he district court was aware that the duty-to-indemnify claim was not ripe, but rather than dismiss that aspect of the case, it included it in the stay that was issued. The proper disposition, however, would have been to dismiss." *Medical Assurance Co., Inc. v. Hellman*, 610 F.3d 371, 375 (7th Cir. 2010) (citing *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995)). In *Zavalis*, the Seventh Circuit found because the party had not yet been deemed liable (or, alternatively,

entered into a settlement) in the underlying suit, "the district court was correct to dismiss without prejudice the declaratory judgment action insofar as it sought a determination of the company's duty to indemnify." *Zavalis*, 52 F.3d at 693.

Taking my lead from the Seventh Circuit, I think the proper route is to dismiss without prejudice this action insofar as it seeks a determination of Property-Owners' duty to indemnify.

## Conclusion

For the foregoing reasons, Property-Owners' Motion for Summary Judgment [DE 26] is **DENIED**. Additionally, this action is dismissed without prejudice as to the determination of Property-Owners' duty to indemnify.

**SO ORDERED**.

ENTERED: November 9, 2016

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT